IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Judge Daniel D. Domenico**

Civil Action No. 1:25-cv-00096-DDD-KAS

UBER TECHNOLOGIES, INC.,

Plaintiff,

v.

SCOTT MOSS, Director of the Division of Labor
    Standards and Statistics, in his official capacity,

and

JARED POLIS, Governor of Colorado, in his official capacity,

Defendants.

---

### ORDER DENYING
### MOTION FOR PRELIMINARY INJUNCTION

Colorado's recently enacted Transportation Network Transparency Bill (SB24-075), referred to as the "TNC Act," goes into effect February 1, 2025, and in relevant part requires transportation network companies (essentially rideshare companies) to make new disclosures to Uber's drivers and riders. C.R.S. § 8-4-127(11) (2024). Plaintiff Uber Technologies, Inc. sued and moved for a preliminary injunction, alleging the Act "will compel Uber to speak, to make unwanted disclosures that contradict or undermine its ongoing public advocacy efforts, to distort information, and to mislead drivers and riders that use Uber's platforms." Dkt. 2 at 7. Defendants oppose the motion, arguing that the challenged

- 1 -

requirements provide important information that will help drivers and customers make informed choices about which rideshare companies to patronize and create a more efficient marketplace. *See* Dkt. 29. For the reasons discussed below, Plaintiff's motion is denied.

## BACKGROUND

The TNC Act was introduced in the Colorado Senate in January 2024, passed the Colorado House and Senate in April and May, and was signed into law by Governor Jared Polis on June 5. *Id*. at 4. Plaintiff challenges Section 11 of the Act, which requires TNCs to make the following disclosures, sometimes referenced here and by the parties as the "Disclosure Requirements":

1. *Driver-Facing Disclosures of Total Rider Payment* (§§ 11(b)(I)–(III), (e)(I)–(III)): "after completing a transportation task, a TNC shall electronically disclose to the driver on a single screen the total amount of money that the consumer paid for the transportation task before any tip was added; the total amount of money paid to the driver for the transportation task before any tip was added, excluding pass-throughs, if any; [and] the amount of tip, if any."

2. *Rider-Facing Disclosure of Driver Earnings* (§§ 11(d)(I)–(II), (e)(I)–(II)): "as soon as the information is available to a TNC and before the TNC offers a consumer the option to tip the driver, the TNC shall electronically disclose to the consumer on a single screen the total amount of money that the consumer paid or will pay for the transportation task, excluding any tip; and the total amount of money that the driver received or will receive for the transportation task before any tip is added, excluding pass-throughs, if any, [and] in a font that is larger than the font used to present other information on the screen; and presented using

- 2 -

design techniques intended to draw the eye to the information."

3. *Pre-Ride Aggregated Mileage and Time Disclosures* (§§ 11(a)(III)–(IV)): "at the time of offering a transportation task to a driver for acceptance, a TNC shall electronically disclose to the driver the aggregated estimated mileage that the driver will drive during dispatch platform time and consumer platform time for the transportation task; and the aggregated estimated time that the driver will spend during dispatch platform time and consumer platform time during the transportation task."

4. *Reporting and IRS Disclosures* (§§ 11(f)(III)–(V)): TNCs must disclose to drivers the time spent and the miles driven during "Available Platform Time," "Dispatch Platform Time," and "Consumer Platform Time." TNCs must also provide drivers on a monthly basis "the total amount the driver may be entitled to deduct from income calculated using the IRS business mileage deduction rate for all miles known to the TNC to have been driven" during each phase.

Plaintiff argues the above disclosures compel "duplicate, misleading, and/or potentially inaccurate speech and do not further the State's purported interests" of transparency and tipping. Dkt. 2 at 8. It states that because the disclosures conscript Plaintiff's platform "to compel Uber to speak a specific government message" in a place, time, font size, and format mandated by the State, and "prohibit Uber from speaking until it does so," they are subject to strict scrutiny, which the disclosures cannot survive. *Id.* at 15. Defendants counter that the Act imposes reasonable disclosure requirements without unduly burdening speech. Dkt. 29 at 10. They state the disclosures give drivers access to information to help them control the amount of time they spend on each ride and give riders much-needed context to help them make informed choices about

- 3 -

what rideshare app to use and how much to tip their drivers. *Id.* at 11. And because the commercial speech at issue concerns mandatory informational disclosures, Defendants argue they are subject to a lower level of scrutiny under *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626 (1985). *Id.* at 18.

Defendants also make two threshold arguments to say the court ought not exercise its equitable authority to issue a preliminary injunction, one contending that Plaintiff's claimed injuries are not redressable and one based on the doctrine of laches. *Id.* at 5–9.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). Such relief may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018). To succeed on a motion for preliminary injunction, the moving party must show: (1) that it is "substantially likely to succeed on the merits"; (2) that it will "suffer irreparable injury" if the court denies the injunction; (3) that its "threatened injury" without the injunction outweighs the opposing party's under the injunction; and (4) that the injunction is not "adverse to the public interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

As the Supreme Court has said, "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Labrador v. Poe*, 144 S.Ct. 921, 923 (2024) (Gorsuch J., concurring in grant of stay) (quoting *Califano v.*

*Yamasaki,* 442 U.S. 682, 702 (1979)). This sort of equitable "remedy must ... be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill v. Whitford,* 585 U.S. 48, 68 (2018) (cleaned up). In this case, the relief sought by Plaintiff would not fully remedy the claimed injury in fact, and I find that a combination of equitable factors require denying the motion at this time.

*First*, the particular sort of remedy sought here—a pre-enforcement preliminary injunction—is particularly fraught: "[t]o begin, there is no freestanding constitutional right to pre-enforcement review in federal court." *Whole Woman's Health v. Jackson*, 142 S.Ct. 522, 539 (2021) (Thomas, J. concurring in part and dissenting in part) (citing *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 220 (1994) (Scalia, J., concurring in part and concurring in judgment)). As Justice Thomas explained, "[s]uch a right would stand in significant tension with the longstanding Article III principle that federal courts generally may not 'give advisory rulings on the potential success of an affirmative defense before a cause of action has even accrued.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 142 (2007) (Thomas, J., dissenting)).

*Second*, the Act's private enforcement mechanisms—that is, the ability of "a person aggrieved" by the Act to bring an action against Plaintiff in state court for injunctive and monetary relief, §§ 13(III)(d)(I)–(II)—significantly diminishes the value of any injunction this court might issue. To the extent that the Defendants here argue that the possibility of private enforcement of the TNC Act deprives this court of jurisdiction, I disagree. *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903 (10th Cir. 2012) ("[R]edressability is satisfied when a favorable decision relieves *an* injury, not every injury.").

It is also obvious that I cannot grant the actual relief Plaintiff requests in its motion: to enjoin "Defendants and private enforcement" of

the challenged provisions, Dkt. 2 at 1, and to "preliminarily enjoin the Disclosure Requirements." *Id.* at 19. Neither of those actions is within a federal court's power:

> A court of equity is as much so limited as a court of law. Consistent with historical practice, a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable principles, no court may lawfully enjoin the world at large or purport to enjoin challenged laws themselves.

*Whole Woman's Health*, 595 U.S. 30, 44 (2021) (cleaned up); *see also Borden v. United States*, 593 U.S. 420, 447 (2021) (Thomas, J., concurring) ("Courts have no authority to 'strik[e] down' statutory text."). So, even if this court were to enjoin some or all the Disclosure Requirements, the Act will go into effect on February 1 and Plaintiff will have to either comply with the requirements (contrary to its asserted First Amendment rights) or run the risk that any "person aggrieved" will be able to sue it in state court. That means that with or without an injunction here, Plaintiff still must choose between either giving up what it asserts are its First Amendment rights by complying with the Act during the pendency of a case or continually violating it and "exposing itself to potentially huge liability." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). Avoiding this sort of "Hobson's choice" is the main justification for a pre-enforcement preliminary injunction in this context, *see id.*, so any injunction here would be closer to an advisory opinion than to actual preservation of the status quo.

*Third*, the urgency of this matter and its concomitantly sparse record is a problem in significant part of Plaintiff's own making, further diminishing the propriety of exercising the "extraordinary" power of enjoining a state law at this time. Of course, by its nature, a preliminary injunction must be decided based on a limited record, and the parties here did

- 6 -

provide declarations of various experts as well as substantial portions of the legislative and administrative record. But as Defendants point out, Plaintiff has been involved in the legislative and administrative process behind the Act for over a year. Dkt. 29 at 7-8; Dkt. 42 at 2-5. While it raised various concerns about the costs and difficulties associated with these provisions, it never raised the constitutional concerns behind this suit. *See* Prel. Hr'g. Tr. 95. More to the point, even though the Act was passed last May, signed into law in June, and rulemaking finalized in November, Plaintiff waited until just a few weeks before the effective date to bring this suit. I certainly agree with Plaintiff that that does not amount to a waiver of its right to challenge the law on this basis, *see id.* at 112, but I agree with Defendants that it has prejudiced both their ability to respond to Plaintiff's concerns and marshal evidence to defend their position. It has also prejudiced the court's ability to assess the case on as thorough a record as it would hope before exercising this power.

In light of this, it is difficult for me to say whether Plaintiff has carried its burden to show that it is likely to succeed on the merits of its claim. Plaintiff's contention that at least some of the Disclosure Requirements (in particular those that micromanage the timing of certain disclosures and that force Plaintiff to "deemphasize" some of the contextual information it wishes to convey) impose something approaching a substantial burden on its freedom of speech, *cf. Zauderer*, 471 U.S. at 638; *Am. Beverage Ass'n v. City and Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980), does have some support in the record. *See* Dkt. 2 at 14; Dkt. 2-1 at 8; Dkt. 41 at 3, 4.

But the question isn't whether Plaintiff "won" the preliminary injunction hearing; it's whether Plaintiff has shown that it is likely to succeed on the merits of this claim after an actual trial and the more

thorough record that would be developed there. I cannot make that finding here. For example, while I denied Defendants' motion to exclude the testimony of Plaintiff's expert witnesses, *see* Dkt. 43, it is true that Defendants seek to enjoin a state law largely on the basis of only two declarations: Plaintiff's Director of Public Policy and Communication's explanation of safety concerns and consumer behavior and its Senior Product Operations Specialist's explanation of the technical difficulties involved in compliance. *See* Dkt. 32; Dkt. 2-2. Even if I found all this testimony persuasive, major questions remain, such as how quickly consumers might adjust to the alterations required by the Act, whether Plaintiff's claimed 12 to 14-second latency could be resolved by its engineering team in a few days or even a few months, and whether the claimed harm to consumers and drivers (in terms of delay and confusion resulting in lower tip rates) would come to pass or not. On a more developed record, Plaintiff might be able to show a likelihood of success, but based on the two declarations before me and the speculative possibility of a long latency period, it's difficult to say if Plaintiff has made that showing yet.

This does not warrant dismissal of the case, and Defendants do not ask for it. And perhaps none of these equitable considerations standing alone would warrant denying a preliminary injunction. But in combination, it does mean that Plaintiff's right to relief is less than clear and unequivocal, *see McDonnell, supra*, and that the injunction sought here would be more burdensome to Defendants than the partial relief I could provide to Plaintiff. *Cf. Califano, supra*. The motion must therefore be denied.

## CONCLUSION

It is **ORDERED** that:

Plaintiff's Motion for a Preliminary Injunction, **Dkt. 2**, is **DENIED**.

DATED: January 31, 2025  BY THE COURT:

Daniel D. Domenico
United States District Judge

- 9 -