IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00096-DDD-KAS

UBER TECHNOLOGIES, INC.,

    Plaintiff,

v.

SCOTT MOSS, Director of the Division of Labor Standards
and Statistics, in his official capacity,

    Defendant.

---

## SCHEDULING ORDER

### 1. DATE OF SCHEDULING CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The scheduling conference in this case was originally set for April 21, 2025, before United States Magistrate Judge Kathryn A. Starnella. On February 11, 2015, the Court entered an order granting in part Plaintiff's Emergency Motion for Status Conference to Set Expedited Case Schedule and Trial date (ECF No. 51). Pursuant to that order, the parties are required to conduct a Rule 26(f) conference no later than February 21, 2025 and submit this proposed scheduling order within a week of the Rule 26(f) conference. The parties are available for a reset scheduling conference at the Court's earliest convenience.

Appearing on behalf of Plaintiff:

Frederick R. Yarger
Kathryn A. Reilly
Virginia M. Creighton
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile:  303.244.1879
Email:  yarger@wtotrial.com
            reilly@wtotrial.com
            creighton@wtotrial.com

Simona A. Agnolucci
Jonathan A. Patchen
Argemira Flórez
Alyxandra N. Vernon
Willkie Farr & Gallagher LLP
333 Bush Street, Floor 34
San Francisco, CA 94104
Telephone:   415.858.7400
Email: SAgnolucci@willkie.com
           jpatchen@willkie.com
           aflorez@willkie.com
           avernon@willkie.com

Michael J. Gottlieb
Jeremy Bylund
Meryl Governski
Willkie Farr Gallagher LLP
1875 K Street N.W.
Washington, DC 20006-1238
Telephone:   202.303.1016
Email: MGottlieb@willkie.com
           jbylund@willkie.com
           governski@willkie.com

Appearing on behalf of Defendant:

J. Gregory Whitehair
Senior Assistant Attorney General
Tanya Santillan
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720-508-6584, 6130
greg.whitehair@coag.gov
tanya.santillan@coag.gov

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over Uber's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1983 because Uber alleges violations of its rights under the First Amendment to the U.S. Constitution. The Court may award declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2022, as well as any other equitable relief it deems appropriate under its inherent powers.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### a. Plaintiff:

Uber is a technology company that operates in Colorado, and throughout the United States, two technology-enabled marketplaces, one for mobility and one for food and other merchandise delivery. First Amended Complaint ("FAC") ¶ 9. Each day, through Uber's rideshare and delivery platforms, drivers in Colorado are connected with riders who request rides and/or consumers who request deliveries. *Id.* ¶ 10. This happens thousands of times daily. *Id.* ¶ 9. Uber endeavors to provide consumers and drivers with a seamless and frictionless experience each time they use the Uber App. *Id.* ¶ 12. Uber's decisions about what information to share and when is tailored to its platform to promote safety, privacy, reliability, quality, and a positive driver and consumer experience. *Id.*

Prior to the Act going into effect, Uber provided drivers in Colorado with information about what their riders paid, and how much of the rider payment went to Uber as Uber's Service Fee, and how much the driver retained as his or her earnings. Uber provided this information to drivers in trip receipts that drivers can access through

the driver app any time they choose, through a weekly summary that is provided by email, a separate weekly summary provided in-app, and on a website-based dashboard. Uber provided riders in Colorado with information about how much they paid for a trip but did not provide any information about what drivers earned for the trip.

Section 11 of the TNC Act alters this balance by compelling Uber to shout the State's message, thousands of times daily, in unsafe and misleading ways. For example, the Driver Facing Disclosures of Total Rider Payment (§ 11(b)(I)–(III)) and Rider Facing Disclosure of Driver Earnings (§ 11(d)(II)) compels Uber to communicate inaccurate and incomplete information as it requires Uber to juxtapose, immediately post trip and "on a single screen," "[i]n a font that is larger than the font used to present any other information on the screen," "[t]he total amount of money that the consumer paid for the transportation task before any tip was added" and "[t]he total amount of money paid to the driver for the transportation task before any tip was added, excluding pass–throughs, if any." TNC Act § 11(e)(I)–(III). These metrics cannot accurately describe what Uber charges as a Service Fee or what accounts for the difference between the rider's payment and the driver's earnings. Rather, they are designed to promote the State's inaccurate message that drivers are insufficiently compensated. FAC ¶¶ 43, 47–48, 62–64. To comply, Uber has been forced to put the mandated information into a Rating Screen, which has made that screen hard to parse, is not sufficient to provide the information that is necessary to contextualize the misleading information the State requires, and that has resulting safety and tipping impacts. *See id.* ¶¶ 44, 67–68.

Likewise, the Aggregated Mileage and Time Disclosures (§ 11(a)(III)–(IV)) compel Uber to provide one combined metric despite Uber's belief that drivers prefer disaggregated mileage and time information. *Id.* ¶¶ 70, 72. To comply, Uber must either remove the disaggregated information it believes drivers find helpful or it must provide both aggregated and disaggregated time and mileage information. Because Uber wants to give drivers more information, it has selected the latter option. This has created text-heavy and cluttered Offer Cards, increasing safety risks and decreasing platform efficiency. *Id.* ¶¶ 74–76. Finally, the Reporting and IRS Disclosure Requirements (§ 11(a)(III)–(IV)) compel Uber to provide drivers with inaccurate and misleading information, including by suggesting a specific dollar amount as a potential tax deduction based on "available platform time." As alleged, only drivers know the intent and purpose of miles driven while in "available platform time," *id.* ¶ 82, and Uber has no way of knowing whether a driver is available for delivery or for rides, *id.* ¶ 84. Requiring Uber to provide platform time and mileage, and then assign a specific dollar amount to it as a potential tax deduction, will result in inaccurate and misleading information.

These Disclosure Requirements violate Uber's First Amendment rights and compel noncommercial, nonfactual, and controversial speech. Strict scrutiny thus applies. But even if a lesser scrutiny applies, the State has failed to carry its significant burden of showing the Requirements pass constitutional muster. To start, its interests in "transparency," "protecting drivers," and "encouraging an open and efficient marketplace" are too broad to be real, substantial, or compelling. *Id.* ¶¶ 102–03. Moreover, the State cannot demonstrate that the Requirements remedy a harm that is

5

"real" rather than "purely hypothetical." Rather, the Driver Facing Disclosures of Total Rider Payment are unnecessary because drivers already receive time, mileage, rider payment and earnings information. *Id.* ¶¶ 103, 50–54. The Rider Facing Disclosure of Driver Earnings are unprecedented, and unnecessary because riders already receive total ride price and have no need for driver earnings. *Id.* ¶¶ 103–04. The Aggregated Mileage and Time Disclosures are unnecessary because drivers already receive disaggregated mileage and time information. *Id.* ¶ 107. And the Reporting and IRS Disclosure Requirements are unnecessary because drivers already have access to and Uber already provides sufficient information for drivers to calculate deductions and because it cannot accurately calculate for drivers their deductions. *Id.* ¶¶ 108–09.

Uber therefore seeks a permanent injunction enjoining TNC Act Section 11, specifically the Driver Facing Disclosures of Total Rider Payment (§ 11(b)(I)–(III)); Rider Facing Disclosure of Driver Earnings (§ 11(d)(II)); Aggregated Mileage and Time Disclosures (§ 11(a)(III)–(IV)); TNC Act § 11(e) ("Display Requirements"); and TNC IRS Disclosures (§ 11(f)(III)–(V)) ("IRS Disclosures").

    **b. Defendant:**

The TNC Act requires transportation network companies operating in Colorado, like Uber, to disclose to drivers and to riders certain readily ascertainable factual information already in the TNC's possession. § 8-4-127(11), C.R.S. (2024). Uber in this equitable action seeks to avoid imposition of those reasonable Disclosure Requirements, despite raising none of its present complaints regarding unconstitutionally forced speech, disclosure inaccuracy, significant technical hurdles, or

6

driver-safety problems during the lengthy legislative negotiations in 2023 and 2024, even commenting during bill consideration that the TNC Act was a "good-faith effort on everyone's part to address drivers' concerns around transparency, while not impacting the rider experience."

Uber then inexplicably waited over seven months after the TNC Act passed to seek "emergency" relief in this Court on those stated grounds. The Court swiftly convened a half-day evidentiary hearing on January 24, 2025, without discovery allowed to the Division. The Court denied the requested preliminary relief in Doc. 46.

Uber thereafter amended its Complaint on February 14, 2025 and now seeks special expedited imposition of a permanent injunction. The Division believes that expedited treatment is no longer appropriate under Rule 65, and in any event has numerous constraints on its available personnel to accelerate this case beyond this agreed Scheduling Order. See below.

On the merits, the Division contends that Uber's allegations of unconstitutionality are unfounded. The TNC Act regulates commercial speech, and under the well-settled principles governing such regulations, the required disclosures are constitutional. They advance Colorado's important and compelling government interests, including in encouraging an open and efficient marketplace for TNCs. On the other side, the TNC Act imposes only minimal burdens on Uber's speech. Particularly given Uber's ability to implement all phases of the contested Disclosure Requirements in the week between the preliminary injunction hearing and the statutory deadline of February 1, 2025. In

7

short, the TNC Act is well-grounded at whatever level of scrutiny the Court applies to the Disclosure Requirements.

The Division respectfully asks that Uber's motion for permanent injunction enjoining TNC Act Section 11 be denied and the case be dismissed with prejudice.

## 4.  UNDISPUTED FACTS

The following facts are undisputed:

1. Uber is a technology company that operates a mobility marketplace and a delivery marketplace within Colorado and in many parts of the United States. Using the mobility marketplace, riders can request rides and drivers can earn money for providing rides.

2. Uber and other transportation network companies are subject to SB24-075, *i.e.*, the TNC Act, which in pertinent part went into effect on February 1, 2025.

3. The TNC Act authorizes enforcement by the director of the Division of Labor Standards and Statistics (DLSS or the Division) or his or her designee, including the discretionary authority to impose statutorily limited penalties. TNC Act § 13. The TNC Act provides the Division with discretion—but does not require the Division—to investigate alleged violations. TNC Act § 13(b).

4. Defendant Scott Moss is the Director of the Division and in his official capacity is charged with enforcing the TNC Act, including the provisions complained of herein.

5. The TNC Act also contains private enforcement mechanisms that are not subject to enforcement or imposition of penalty by the Division.

8

6. Uber challenges four provisions in Section 11, Driver Facing Disclosures of Total Rider Payment (§ 11(b)(I)–(III)); Rider Facing Disclosure of Driver Earnings (§ 11(d)(II)); Aggregated Mileage and Time Disclosures (§ 11(a)(III)–(IV)); TNC Act § 11(e) ("Display Requirements"); and TNC IRS Disclosures (§ 11(f)(III)–(V)) ("IRS Disclosures") hereinafter, referred to collectively, as "Disclosure Requirements."

7. TNC Act § 11(e)(I)-(III) requires that Uber display the Driver Facing Disclosures of Total Rider Payment "prominently" on a single screen in the app and "[i]n a font that is larger than the font used to present any other information on the screen" and "using design techniques intended to draw the eye to the information."

8. TNC Act § 11(e)(I)-(III) requires that Uber display the Rider Facing Disclosure of Driver Earnings "prominently" on a single screen in the app and "[i]n a font that is larger than the font used to present any other information on the screen" and "using design techniques intended to draw the eye to the information."

9. Uber's position is that it is in and has since February 1, 2025 been in compliance with the TNC Act, but the Division has not yet considered or determined its position on this issue, and Uber is not aware of the Division's position on whether Uber's disclosures are sufficiently "prominent" or whether its "design techniques" sufficiently "draw the eye."

### 5. COMPUTATION OF DAMAGES

Uber is not seeking money damages, but seeks its costs and reasonable attorneys' fees as permitted by law.

## 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

**a.  Date of Rule 26(f) meeting:**

February 21 and 24, 2025

**b.  Names of each participant and party he/she represented:**

Michael Gottlieb, Frederick Yarger, and Kathryn Reilly on behalf of Plaintiff Uber Technologies, Inc.

J. Gregory Whitehair and Tanya M. Santillan on behalf of Defendant Scott Moss, in his official capacity as Director of the Division of Labor Standards and Statistics.

**c.  Statement of when Rule 26(a)(1) disclosures were made or will be made.**

March 10, 2025

**d.  Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

None.

**e.  Statement concerning any agreements to conduct informal discovery.**

The parties do not have any agreements to conduct informal discovery; the parties, however, are amenable to exploring ways to streamline and expedite the proceedings.

**f.  Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties have already used a unified exhibit numbering system for the preliminary injunction hearing and will continue to do so.

The parties agree that each party should have not more than eight testifying experts, whether retained or non-retained.

**g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

Uber anticipates that its claim will involve electronically stored information or records maintained in electronic form. It has already notified potential witnesses and custodians that they must preserve electronically stored information, including emails, text or instant messages, or other communications, related to the Disclosure Requirements.

The Division anticipates that discovery in this matter will involve a moderate to small amount of the Division's electronically stored information. ~~An ESI Protocol is being negotiated for submission on March 10, 2025.~~ ESI Protocol entered on March 17, 2025 [#62].

Both parties have, since at least the filing of the original Complaint, notified their custodians of information that they must preserve electronically stored information, including emails, text or instant messages, or other communications, related to the Disclosure Requirements.

**h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

Despite good-faith communications, the parties are unable to see a basis between themselves upon which the case can be promptly settled or resolved.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

The parties propose the following schedule:

| Proposed Deadline | Event |
|---|---|
| March 3, 2025 | Deadline to amend the pleadings |
| March 10, 2025 | Deadline to exchange initial disclosures |
| March 10, 2025 | Deadline to submit protective order |
| March 10, 2025 | Deadline to submit ESI order |
| March 17, 2025 | Defendant's Answer to the Amended Complaint |
| ~~March 24, 2025~~ July 11, 2025 (45 days before close of discovery) | Deadline to serve written discovery requests |
| ~~May 5, 2025~~ May 12, 2025 | Deadline to substantially complete document production |
| July 21, 2025 | Deadline to file expert reports |
| August 4, 2025 | Deadline to file expert rebuttal reports |
| August 25, 2025 | Deadline to complete discovery |
| ~~September 1, 2025~~ August 29, 2025 [Per DDD Trial Prep Order [#65]] | Deadline to file ~~dispositive motions~~ or *Daubert* motions bench briefs |
| October 2025 October 15, 2025, at 9 a.m. | 3-day Bench Trial requested |

12

**Limit of up to 10 fact witness depositions per side. Parties to confer re total length of 30(b)(6) deposition. Parties to seek discovery hearing if cannot resolve the issue.**

a. **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

Regarding depositions, the parties disagree whether the presumptive ten (10) depositions in Rule 30(a)(2) are necessary and appropriate here:

<u>Uber's position</u>: In addition to the opposing party and expert witnesses, Plaintiff proposes that the number of depositions for both parties be limited to no more than six additional witnesses.

<u>The Division's position:</u> In addition to reserving the right to depose all of Plaintiff's expert witnesses (retained and non-retained), the Division seeks to depose up to ten fact witnesses, to include party Uber in more than one Rule 30(b)(6) deposition day; the Division is willing to cap elapsed fact-witness examination time to no more than sixty (60) hours, taking up no longer than seven hours in any deposition on any given day, absent agreement by the parties.

Regarding interrogatories, the Parties propose the limitations set forth in Federal Rule of Civil Procedure 33.  **25 Rogs per side.**

b. **Limitations which any party proposes on the length of depositions.**

The Parties propose the length of depositions should be governed by Fed. R. Civ. P. 30(d)(1) unless otherwise agreed by the parties.

c. **Limitations which any party proposes on the number of requests for production and/or requests for admission.**

The Parties propose limiting requests per production and admission to 25 per side in compliance with Fed. R. Civ. P. 26(b)(2)(C).

d. **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**

The Parties propose that the deadline for service of written discovery requests be ~~March 24, 2025~~ July 11, 2025 (45 days before close of discovery)

e. **Other Planning or Discovery Orders**

The Parties propose that a stipulated protective order, or if they cannot reach agreement, proposed protective orders be submitted on or before March 10, 2025.

### 9. CASE PLAN AND SCHEDULE

a. **Deadline for Joinder of Parties and Amendment of Pleadings:**

March 3, 2025

b. **Discovery Cutoff:**

August 25, 2025

c. ~~Dispositive Motion Deadline:~~ Opening Trial Brief and Rule 702 Motions due ~~September 1, 2025~~ August 29, 2025 (per DDD Trial Prep Order)

d. **Expert Witness Disclosure:**

1. **The parties shall identify anticipated fields of expert testimony, if any.**

Plaintiff anticipates designating 4-8 retained and non-retained experts to address the following topics:

1. Screen design and related customer confusion and safety issues
2. Uber's data systems and architectures as they relate to the latency issue
3. Evidence relating to driver and rider confusion
4. Possibly: insurance/regulatory

14

The Division anticipates designating 4-8 experts to address the following topics:

1. The Information Technology burdens Uber alleges

2. Safety issues Uber alleges

3. Economics and statistics related to consumer (drivers/riders) impacts stemming from the Disclosure Requirements

4. Possibly: insurance/regulatory

**2. Limitations which the parties propose on the use or number of expert witnesses.**

The Parties propose a limit of <u>eight</u> experts per side, retained or non-retained.

**3. The parties shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

July 21, 2025

**4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

August 4, 2025

**e. Identification of Persons to Be Deposed:**

In addition to Defendant and Defendant's expert witnesses, Plaintiff plans to depose:

- Senator Rodriguez

- Regulators who advised Uber (*e.g.*, Kristina Rosett)

- Riders that testified before the Legislature regarding their need to know driver earnings

In addition to the possibility of deposing Plaintiff's expert witnesses (retained and non-retained), the Division anticipates deposing:

15

- Rule 30(b)(6) on Uber technical staff involved in implementing the Disclosure Requirements
- Rule 30(b)(6) on Uber public relations department and/or retained lobbyists involved in managing the TNC Act
- Rule 30(b)(6) on Uber personnel or vendors who conduct or have conducted pertinent surveys of drivers or riders
- Rule 30(b)(6) on Uber personnel involved in implementing driver-facing changes in California and in Massachusetts since 2020
- Third-party TNC competitors in Colorado

The Division reserves the right to depose individual(s) identified during discovery as likely to have discoverable information, including any individuals identified in Uber's initial disclosures; and (ii) any experts offered by Uber.

### 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held at the following dates and times:

*By VTC on July 22, 2025, at 10:30 a.m. Mountain Time*
_____, 20\_\_ at \_\_ o'clock \_\_\_\_m.

b. A *combined* final pretrial conference *& Trial Prep* will be held at the following date and time:

*October 3, 2025, at 10:30 a.m. per DDD Trial Prep Order*
_____, 20\_\_ at \_\_ o'clock \_\_\_\_m.

A Final Pretrial Order shall be prepared by the parties and submitted to the Court no later than seven (7) days before the final pretrial conference. *September 30, 2025, per DDD Trial Prep Order.*

### 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

Uber believes that an early trial date is appropriate and necessary given the

ongoing irreparable constitutional and reputational harm Uber is suffering. While Uber originally requested a trial date in June 2025, it has agreed to the compromise proposal of an October 2025 trial date to accommodate the scheduling concerns raised by the Division.

The Division believes that a normal pretrial schedule should be applied given the complete lack of discovery available to the Division to date, and the breadth of issues raised by Uber. Nevertheless, as a good-faith accommodation, the Director is willing to enter into this very compressed Scheduling Order so long as Uber and the Court remain aware of significant short staffing of the Department of Law advisors assigned to the Division's litigation, the actively competing discovery and case-preparation obligations of the Director's two undersigned trial counsel in this and in an unrelated case (in this Court) brought against the Division by the major passenger airlines, and the heavy demands of the 2025 legislative session.

    **b. Anticipated length of trial and whether trial is to the court or jury.**

The Parties anticipate a three-day bench trial to the Court. ==Set to commence on October 15, 2025, at 9 a.m. per DDD Trial Prep Order.==

    **c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

None.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).  **& Mag. J. discovery dispute procedures.**

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This scheduling order cannot be altered or amended except upon a showing of good cause.

DATED:  __April 21_____, 2025.

BY THE COURT:

_____

APPROVED:

|  |  |
|---|---|
| *s/ Kathryn A. Reilly* | PHILIP J. WEISER<br>Attorney General<br><br>*s/ J. Gregory Whitehair* |

<div style="display:flex">

Frederick R. Yarger
Kathryn A. Reilly
Virginia M. Creighton
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile:  303.244.1879
Email:  yarger@wtotrial.com
          reilly@wtotrial.com
          creighton@wtotrial.com

Michael J. Gottlieb
Jeremy Bylund
Meryl Governski
Willkie Farr Gallagher LLP
1875 K Street N.W.
Washington, DC 20006-1238
Telephone:   202.303.1016
Email: MGottlieb@willkie.com
          jbylund@willkie.com
          governski@willkie.com

Simona A. Agnolucci
Jonathan A. Patchen
Argemira Flórez
Alyxandra N. Vernon
Willkie Farr & Gallagher LLP
333 Bush Street, Floor 34
San Francisco, CA 94104
Telephone:   415.858.7400
Email: SAgnolucci@willkie.com
          jpatchen@willkie.com
          aflorez@willkie.com
          avernon@willkie.com

*Attorneys for Plaintiff*

</div>

J. Gregory Whitehair*
Senior Assistant Attorney General
Tanya Santillan*
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720-508-6584, 6130
greg.whitehair@coag.gov
tanya.santillan@coag.gov
*Counsel of record
*Attorneys for Defendant*

19